UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In Re ) | | Chapter 13 |
| ) | | |
| SILVESTRE B. MIRELEZ, ) | | Case No. 04-17555–GBN |
| ) | | |
| Debtor. ) | | FINDINGS OF FACT, |
| ) | | CONCLUSIONS OF LAW |
| _____ ) | | AND ORDER |

The good faith of debtor Silvestre B. Mirelez in converting his bankruptcy case to Chapter 13, raised in the objection to confirmation of debtor's amended plan by creditor Brad Almond was tried to the court as a bench trial in sessions on September 19 and November 22, 2005 and January 20 and February 13, 2006. Post trial briefing was completed on April 17, 2006. An interim order was entered on May 3, 2006 announcing the court's decision.

The court has considered sworn witness testimony, admitted exhibits and the facts and circumstances of this case. The following findings and conclusions are now entered:

**FINDINGS OF FACT**

1.) Creditor Almond sued debtor Mirelez in Maricopa County Superior Court case CV 2002-015476 in an action treated by the court as alleging intentional trespass to plaintiff's real property. Following a bench trial, the court ruled in part:

> Here the defendant damaged the trees/bushes on plaintiff's real property as well as cutting the waterline to this vegetation after entering the real property with these purposes in mind. The defendant committed these acts intentionally as part of a pattern of harassment and intimidation of plaintiff over a period of years. The plaintiff suffered damages totaling $1,518.37 which represents the costs of replacement of the trees and waterline.

> Since the acts of defendant were intentional and done for an improper purpose, the Court awards punitive damages of $13,662. This is nine times the actual damage here.
> Since the defendant appealed from the decision of the arbitrator and did not obtain a favorable judgment by more than 25%, plaintiff is also entitled to costs and attorneys fees. Additionally defendant shall pay Maricopa County the compensation paid the arbitrator.[1]

A judgment was signed on July 19, 2004 for the above actual and punitive damages as well as attorneys' fees of $6,020.00 and costs of $433.84 plus interest. Debtor appealed (prematurely) the judgment to the Arizona Court of Appeals on June 21, 2004. On September 1 that court granted appellant a requested extension until October 18, 2004 to file his opening brief. No brief was filed. Debtor did not pay his former counsel $5,323.00 for an outstanding legal bill and an additional $5,000 for anticipated appellate costs, as demanded before counsel would prepare the brief. Superior Court ruling dated May 24, 2004, attached as exhibit A to plaintiff's complaint in bankruptcy adversary proceeding 05-00019; Superior Court Judgment attached as exhibit B, *id.;* admitted exhibits ("exs.") 12 (Counsel's demand letter of August 31, 2004 and motion for extension at p.1), 13; trial testimony ("test.") of Sylvestre B. Mirelez.

2.) Rather than paying counsel and prosecuting his pending appeal, debtor purchased a new 2004 Nissan crew cab pickup for $36,450.60 on August 11, 2004[2], trading in his 1994 Ford F-350 pickup and obligating himself to make monthly payments of $557.51 for five years. His testimony is that this four-wheel drive vehicle was purchased for his work as a professional truck driver and a car would not be practical. He utilizes it, as he did his prior pickup, on the job site to run errands and haul parts and workers. However, no employment

---

[1] Debtor was also permanently enjoined from directly or indirectly contacting plaintiff. Ruling of May 24, 2004 at p. 2, attachment to adversary complaint 05-00019.

[2] While counsel's demand letter is dated three weeks after the purchase, debtor knew at the time that the adverse money judgment was on appeal. He had already paid his counsel $700 to file the appeal. Mirelez test. of September 19, 2005.

contract requires him to own a personal truck. He would not lose his job if he did not own such a vehicle. While he had little money when he bought this vehicle, he felt he could "barely" afford it as he had recently reduced his mortgage payment through refinancing in March of 2004[3] and also had his child support payments reduced. At this time, he lacked the funds to either pay the money judgment or obtain a supercedes bond. Debtor testified he purchased the new vehicle to obtain reliable transportation and improved gas mileage. He concludes he saves $1,860.20 a year, solely based on gas mileage, by this purchase. Debtor has no written evidence of his prior vehicle's condition or costly repairs. His friend, Ms. Marjory Blannin, testified the Ford vehicle was ten years old, had a power steering problem and had broken down on a trip.

Subsequently the Chapter 13 trustee expressed concerns about this acquisition:

> 4. The Trustee has determined the vehicle payments to be excessive and a diversion of disposable income. The Trustee allows vehicle payments up to $450.00 per month. The Trustee requires Debtor to provide equivalent funds to the unsecured creditors ($109.00 per month x 33 months) to the unsecured creditors for the retention of the vehicle.

Trustee's evaluation of amended plan at p. 2, filed July 1, 2005. The court does not find debtor's justification for the purchase of this expensive vehicle on the eve of bankruptcy and in the face of entry of a large adverse money judgment to be credible.

Debtor went to court and won a reduced child support award by also obtaining half time custody of his 11 year-old son. He now concedes it was illusory to view the reduction as a significant income increase, as expanded child custody inevitably increases household expenses. *Also see* n. 2, *supra*. The fact finder agrees. Exs. 14, 25; Mirelez test.; test. of Marjory N. Blannin; administrative docket item ("dkt.") 33.

3.) Debtor filed a voluntary chapter 7 liquidation case on October 5, 2004. He cannot recall if he attempted to settle the tort litigation with plaintiff prior to the state court trial.

---

[3] The refinancing of his variable rate mortgage reduced his monthly payment from $803 to $660. Test. of January 20, 2006.

His testimony is that he made three attempts to obtain financing to pay plaintiff, beginning on the judgment date. Two submitted lenders' denial letters are dated in June and September of 2005, well after his voluntary bankruptcy filing. Previously, debtor filed a bankruptcy case in April of 1997 and discharged a large amount of personal debt. The principal cause of the present bankruptcy was former counsel's demand for payment of more than $10,000 before he would prosecute the state court appeal.

Debtor initially scheduled unsecured liabilities of $32,608.21 and secured debt of $86,221.82. Plaintiff's scheduled claim of $21,634.21 made him the largest of four unsecured creditors. Plaintiff filled an adversary complaint to determine dischargeability on January 12, 2005, arguing his claim was caused by a willful and malicious injury and invoking 11 U.S.C. §523 (a) (6). Debtor answered that he would convert his bankruptcy case to Chapter 13 and pay plaintiff's actual costs and damages. The bankruptcy was voluntarily converted to Chapter 13 at debtor's request on January 25, 2005. Creditor, an energetic *pro se* litigator,[4] objected to confirmation of debtor's Chapter 13 plan on May 10, 2005 and to confirmation of debtor's amended plan on June 10, 2005. Mirelez test.; exs. 18-19; Official Schedule F, filed October 5, 2004; complaint in adversary 05-00019 at dkt. 1; answer at p. 2 in adversary dkt. 4; order of January 25, 2005 at administrative dkt. 10; confirmation objections at dkts. 28 and 31.

4.) Debtor's conduct constitutes bad faith in the filing and conversion of his bankruptcy to Chapter 13 to discharge this claim. First, he filed bankruptcy in an attempt to avoid a state court judgment, which he could not appeal because of his purchase of a costly vehicle. Second, plaintiff's claim appears to be nondischargeable in Chapter 7, as a willful and malicious injury, given the findings of the state court. *See* 11 U.S.C. §523 (a) (6) and Finding of Fact 1, *id*. Finally, when plaintiff pursued defendant with a nondischargeability complaint, debtor converted to Chapter 13 to take advantage of the broader discharge available under 11 U.S.C. §1328 (a) (2).

---

[4] Debtor's counsel exhibited commendable patience, courtesy and professionalism in observed dealings with creditor.

5.) To the extent any of the following conclusions of law should be considered findings of fact, they are hereby incorporated by reference.

**CONCLUSIONS OF LAW**

1.) To the extent any of the above findings of fact should be considered conclusions of law, they are hereby incorporated by reference.

2.) Jurisdiction of debtor's bankruptcy case is vested in the United States District Court for the District of Arizona. 28 U.S.C. §1334(a) (1994). That court has referred all cases under Title 11 of the United States Code and all adversary proceedings and contested matters arising under Title 11 or related to a bankruptcy case to this court. 28 U.S.C. §157 (a) (1994), amended District Court General Order 01-15. This contested matter having been appropriately referred, this court has core bankruptcy jurisdiction to enter a final order regarding creditor's objection to confirmation of debtor's amended chapter 13 plan. 28 U.S.C. §157 (b) (2) (L). No party has argued to the contrary.

3.) This court's conclusions of law are reviewed *de novo*. Its factual findings are reviewed for clear error. *Hanf v. Summers (In re Summers),* 332 F. 3d 1240, 1242 (9th Cir. 2003). Findings of fact, whether based on oral or documentary evidence, will not be set aside unless clearly erroneous. Due regard is given to the opportunity of the bankruptcy court to judge witness credibility. Rule 8013, *F.R.B.P.* The appellate court accepts the bankruptcy court's findings, unless upon review, it is left with the definite, firm conviction that a mistake has been committed. *Ganis Credit Corp. v, Anderson (In re Jan Weilert RV, Inc.),* 315 F. 3d 1192, 1196 (9th Cir.) *amended by* 326 F. 3d 1028 (9th Cir. 2003).

4.) Debtor's amended plan predicts an 86% return to creditors by extension of its term to the statutory maximum of five years, continuing to forgo vacations and devoting vacation pay and tax refunds to plan funding. Chapter 13 plan at dkt. 60.[5] While these

---

[5] Debtor also proposes to retain his home and truck and pay his secured creditors in full for such retention. Amended plan at pgs. 2-3, bankruptcy dkt. 29.

amendments could well resolve creditor's objections premised on best efforts and feasibility, this court has an independent duty to make a considered assessment of debtor's good faith. *Fidelity & Casualty Co. of New York v. Warren (In re Warren),* 89 B.R. 87, 90 (B.A.P. 9th Cir. 1988), 11 U.S.C. §1325 (a) (3). In evaluating good faith, the court looks at more than whether the plan is debtor's best efforts. The good faith requirement is separate and distinct from the best effort requirement. *Id.* at 94-95.

Debtor has the burden to establish his good faith, a burden that is especially heavy when he is seeking to discharge debt in Chapter 13 that may not be dischargeable in Chapter 7. *Id.* In determining whether a Chapter 13 case has been filed in good faith, a bankruptcy court must consider the totality of the circumstances, in light of all militating factors. *Ho v. Dowell (In re Ho),* 274 B.R. 867, 876 (B.A.P. 9th Cir. 2002). These factors include:

> (1) whether the debtor misrepresented facts in his ... petition or plan, unfairly manipulated the Bankruptcy Code or otherwise filed the Chapter 13 petition or plan in an inequitable manner;
>
> (2) the debtor's history of filings and dismissals;
>
> (3) whether the debtor's only purpose in filing for chapter 13 protection is to defeat state court litigation; and
>
> (4) whether egregious behavior is present. *Ho, id.,* (citing authority).

*Warren* set forth an 11-factor test that was reaffirmed in *Smyrnos v. Padilla (In re Padilla),* 213 B.R. 349, 352-53 (B.A.P. 9th Cir. 1997) in determining whether a Chapter 13 plan is proposed in good faith:

> 1) The amount of the proposed payments and the amounts of the debtor's surplus:
> 2) The debtor's employment history, ability to earn, and likelihood of future increases in income;
> 3) The probable or expected duration of the plan;
> 4) The accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;

> 5) The extent of preferential treatment between classes of creditors:
> 6) The extent to which secured claims are modified;
> 7) The type of debt sought to be discharged, and whether any such debt is nondischargeable in Chapter 7;
> 8) The existence of special circumstances such as inordinate medical expenses;
> 9) The frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
> 10) The motivation and sincerity of the debtor in seeking Chapter 13 relief; and
> 11) The burden which the plan's administration would place upon the trustee.

*Padilla id.* at 352-53, citing *Warren* at 93. A Chapter 13 plan is filed in bad faith if the true purpose is to defeat state court litigation. *Chinichian v. Campolongo (In re Chinichian),* 784 F. 2d 1440, 1445-46 (9th Cir. 1986). It is bad faith to seek to use bankruptcy to alter whatever result would have been achieved by continuing to litigate a state court action. *Dressler v. The Seeley Co. (In re Silberkraus),* 336 F.3d 864, 871 (9th Cir. 2003) (Affirming bad faith dismissal of a Chapter 11 filing two days before a state court was to schedule a trial date).

5.) A finding of bad faith does not require fraudulent intent by debtor. Neither malice nor actual fraud is required to be found. The bankruptcy judge is not required to find evidence of ill will directed at creditors. Nor must it be shown that debtor was affirmatively attempting to violate the law. Malfeasance is not a prerequisite to bad faith. *Leavitt v. Soto (In re Leavitt),* 171 F.3d 1219, 1224-25 (9th Cir. 1999). Debtor bears the burden of proving the filing was in good faith. *Leavitt v. Soto (In re Leavitt),* 209 B.R. 935, 940 (B.A.P. 9th Cir. 1997), *aff'd* 171 F.3d 1219 (9th Cir. 1999). A finding of bad faith is cause to either dismiss the case or convert it. *Ho, supra* at 877.

6.) While a finding of bad faith is not mandatory simply because debtor sought Chapter 13 relief after a nondischargeability complaint was filed, consideration of all the circumstances and factors of this case in resolving the objection is mandatory. *Padilla* 213 B.R. at 352-55. Considering all the circumstances of this case, including all militating factors, the court concludes debtor has failed his burden of proving the Chapter 13 conversion was in good faith.

7

The conversion was filed in an inequitable manner to moot out plaintiff's pending dischargeability litigation, as announced in debtor's adversary answer. Prior to plaintiff's complaint filing, debtor was content to attempt discharge of his largest unsecured creditor's claim in a Chapter 7 liquidation, without devoting any post petition funds to his creditors. Debtor's history of filings and dismissals is neutral in this case. He filed a previous bankruptcy in the recent past, but successfully completed it.

A major factor is this fact finder's determination that debtor's purpose in seeking bankruptcy protection was to defeat state court litigation. Little or no evidence was presented indicating debtor was actively being pressured by creditors other than plaintiff.[6] His decision to file bankruptcy occurred shortly after entry of a judgment imposing punitive damages in favor of his largest unsecured creditor. Debtor testified the prime factor in his filing decision was his inability to pay appellate attorneys' fees. His finances were dissipated by his purchase of a costly vehicle after entry of the adverse judgment. The need to purchase this particular type of vehicle was not established by debtor. The court considers all these circumstances and factors as indicative of bad faith. This conclusion is compounded by debtor's rapid conversion to Chapter 13, seeking a broader discharge, when the creditor pursued him in the Chapter 7 case through an adversary proceeding.

Finally, egregious behavior appears to be present: the state court expressly found debtor intentionally damaged plaintiff's property, as part of a pattern of harassment and awarded punitive damages. The court concludes debtor converted his case to Chapter 13 and proposed a plan in bad faith. Consideration of the *Warren* good faith factors reaches a similar result. While the numerical majority of the factors are neutral or even favorable to debtor, the fact finder's determination is that these factors are outweighed by circumstances that the majority of unsecured debt sought to be discharged appears nondischargeable in Chapter 7, the special circumstances

---

**6** Both his original and amended plans listed no arrears on payments to secured creditors on debtor's home and truck and no unpaid priority tax debt. Bankruptcy dkts. 17 at pgs. 2-3, 29 at pgs. 2-4.

of significant tort debt created through intentional conduct and the motivation and sincerity of debtor in seeking Chapter 13 relief. *Padilla, id.* at 352-53.

**ORDER**

The court rules for creditor and against debtor. Creditor's objection to confirmation of debtor's amended plan will be sustained on the basis of bad faith. The court will not reach the remainder of creditor's confirmation objections. If this matter is not settled by the parties, debtor will be permitted ten days from the date of this order to either move to dismiss his case or reconvert it back to Chapter 7. Any objection to dismissal or conversion will be filed and served within seven days of service of debtor's motion.

DATED this _____ day of May, 2006.

_____
George B. Nielsen, Jr.
United States Bankruptcy Judge

Copies mailed this 9th
day of May, 2006, to:

Brad Almond
1715 N. Laurel Avenue
Phoenix, AZ 85007
Pro Se Objector

Tim Coker
COKER LAW OFFICE
637 N. 3rd Avenue
Phoenix, AZ 85003
Attorney for Debtor

Edward J. Maney
CHAPTER 13 TRUSTEE
P.O. Box 10434
Phoenix, AZ 85064-0434

By /s/Rachael M. Stapleton
     Judicial Assistant